SEAN M. KNEAFSEY (SBN 180863)
skneafsey@kneafseyfirm.com
KRISTINA KOUSHERIAN (SBN 339717)
kkousherian@kneafseyfirm.com
THE KNEAFSEY FIRM, INC.
707 Wilshire Blvd., Suite 3700
Los Angeles, California 90017
Phone: (213) 892-1200
Fax: (213) 892-1208

JEREMY PASTERNAK (SBN 181618)
jdp@pasternaklaw.com
LAW OFFICES OF JEREMY PASTERNAK
A Professional Corporation
354 Pine St., Fifth Floor
San Francisco, CA 94104
Phone: (415) 693-0300
Fax: (415) 693-0393

*Attorneys for Plaintiff,*
LYAN FRANCIS DE SOUZA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYAN FRANCIS DE SOUZA, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DAWSON TECHNICAL, INC., a Hawaiian Corporation, and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:21-cv-01103-JLS-MSB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:        September 22, 2022<br>Time:        1:30 p.m.<br>Courtroom:  4D |

1

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   FACTUAL BACKGROUND ....................................................................... 1

III.  PROCEDURAL BACKGROUND ............................................................. 4

IV.  DISCUSSION ............................................................................................. 5

  A.  Plaintiff's First Cause of Action for Violation of Labor Code Section 1102.5(b) ...................................................................................................................... 5

    1.  Legal Standard ...................................................................................... 5

      a.  Overview of Labor Code Section 1102.5(b) ................................... 5

      b.  The Employee Need Not Prove an Actual Violation of Any Underlying Statute—Only That the Employee "Reasonably Believed" That That There Was a Violation. In Fact, Under Labor Code Section 1102.5(b), The Employee Can Be Wrong—There May Not Have Been a Violation at All…………………………………………………………………… 6

      c.  Plaintiff Need Only Show "Some Legal Foundation" For His Suspicion of Illegal Activity; Plaintiff Need Not Plead an Actual Violation .................... 7

    2.  Plaintiff's SAC More Than Sufficiently Pleads a Cause of Action for Violation of Labor Code Section 1102.5(b) .................................................................. 8

    3.  Plaintiff Sufficiently Alleges That He Engaged in Protected Activity ......... 14

  B.  Plaintiff's SAC Sufficiently States a Third Cause of Action for Wrongful Termination in Violation of Public Policy ........................................................ 16

  C.  If For Any Reason the Court Finds That More Specificity is Required, Leave to Amend Should be Granted .......................................................................... 16

V.   CONCLUSION ......................................................................................... 17

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2

**TABLE OF AUTHORITIES**

3

**Cases**

4

*Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)..............................1, 13

5

*Bradley v. Chiron Corp.,* 136 F.3d 1317, 1326 (Fed.Cir.1998) .................................14

6

*Carter v. Escondido Union High Sch. Dist.,* 148 Cal. App. 4th 922, 933–34 (2007)…

7

................................................................................................................................6

8

*Clevland v. Ludwig Institute for Cancer Research Ltd.*, 2022 WL 80265 at *4 (S.D.

9

Cal. 2022)..........................................................................................................5, 7, 8

10

*Devlyn v. Lassen Mun. Utility Dist.*, 737 F.Supp.2d 1116, 1124 (2010) ...............7, 10

11

*Fleeman v. County of Kern*, 2021 WL 1221469, at *5 (E.D. Cal. 2021) ..............8, 11

12

*Green v. Ralee Engineering Co.,* 19 Cal.4th 66, 87 (1998).........................................7

13

*Jadwin v. County of Kern,* 610 F.Supp.2d 1129, 1153 (E.D. Cal. 2009)....................7

14

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009) ........................................11

15

*La v. San Mateo Cty. Transit Dist.*, 2014 WL 4632224, at *5 (N.D. Cal. 2014)........8

16

*Love v. Motion Indus., Inc.*, 309 F.Supp.2d 1128, 1135 (N.D.Cal.2004) ...................8

17

*Lukov v. Schindler Elevator Corp.,* 594 Fed. Appx 357, 358 (9th Cir. 2015)............6

18

*Nejadian v. County of Los Angeles*, 40 Cal.App.5th 703, 719 (2019) .......................7

19

*Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir. 2007)..............................13, 15

20

*PAE Government Services, Inc. v. MPRI, Inc.,* 514 F.3d 856, 859-860 (2007).........15

21

*Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc*., 806 F2d 1393, 1401 (9th

22

Cir. 1986) ...............................................................................................................16

23

*Tam v. Qualcomm, Inc*., 300 F. Supp. 3d 1130, 1148 (S.D. Cal. 2018).......................6

24

*Turner v. City and County of San Francisco,* 892 F.Supp.2d 1188, 1199 (N.D. Cal.

25

2012) .................................................................................................................7, 11

26

*Watson v. Old Dominion Freight Line, Inc*., 2020 WL 10357171 (C.D. Cal. 2020)

27

................................................................................................................................15

28

*Wool v. Tandem Computers,* 818 F.2d 1433, 1439 (9thCir. 1987)......................12, 13

1

2

**Statutes**

3

F.R.C.P. 9(b) ............................................................................................... 11

4

Labor Code § 204(a) ................................................................................... 7

5

Labor Code § 1102.5(b) ......................................................... 1, 5, 6, 8, 12, 14, 15

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.   INTRODUCTION

Pursuant to Labor Code section 1102.5(b), Plaintiff need only prove that he was retaliated against because his "employer believe[d] that the employee may disclose information . . . that the employee has reasonable cause to believe . . . [is] a violation of state or federal law."  Lab. Code § 1102.5(b).  *See infra* part IV.A.1.a. The employee need not prove an actual violation.  *See infra* part IV.A.1.b.  In fact, the employee can be mistaken—there may not have even been a violation at all.  *See infra* part IV.A.1.b-c.  However, if the employer choses to retaliate against the employee because the "employer believes" that the employee "may disclose information," then the employer violates Labor Code section 1102.5(b).

Here, Plaintiff's SAC pleads detailed facts explaining why Plaintiff believed that Dawson executives Wesley Lane, Billy Cress, and Jeff Bleke were causing Dawson to fraudulently bill the federal government via the entities JBW and ISB Consulting in violation of 13 federal and state statues. *See infra* parts IV.A.1.c. and IV.A.2. Plaintiff explains that when he brought these facts to the attention of David Johnson and informed Johnson that he intended to report these facts to Dawson management and to the U.S Attorney's office, that Plaintiff was fired.  (SAC, ¶¶ 21-23).

Plaintiff's SAC sufficiently states a causes of action for violation of Labor Code section 1102.5(b). The SAC more than sufficiently "give[s] defendants notice of the particular misconduct . . .so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Plaintiff respectfully requests that the motion be denied.

## II.   FACTUAL BACKGROUND

Plaintiff Leon DeSouza is a former employee of Defendant Dawson. He was a senior level executive, whose title was the Director of Strategy and Development. He was responsible for business development, sales, and marketing. (SAC, ¶ 10).

The following is all alleged in the Second Amended Complaint ("SAC"):

Dawson contracts with agencies of the Federal Government including the Army, Navy, and Air Force, for a variety of construction, operations and maintenance, environmental, and professional and technical services. Between 2015-2020, Dawson entered into hundreds of contracts with at least 35-40 subcontractors. Defendants invoiced various United States agencies, such as the Army, Navy, and Airforce, for services performed by its subcontractors. (SAC, ¶ 11). In the course of that billing, Defendants represented to the Federal Government that Dawson's subcontractors had been paid. (SAC, ¶ 11).

Z Geo Data was one of the subcontractors hired by Dawson to perform environmental science services. (SAC, ¶ 12).

In early 2020, Plaintiff received a call from Zhen Hua Zhang ("Zhang"), president of Z Geo Data. Zhang notified Plaintiff that he received a document indicating that Dawson had represented to the Federal Government that Z Geo Data had been paid by Dawson when, in fact, it had not. (SAC, ¶ 13).

In March of 2020, Plaintiff received a call from a Eugene Sellers ("Sellers"), a former employee of Dawson. Sellers told Plaintiff that he had brought a false claims lawsuit against Dawson's affiliated entities (the "Sellers Lawsuit"). (SAC, ¶ 14).

These incidents led Plaintiff to investigate these issues. (SAC, ¶ 15). In doing do, Plaintiff learned that Dawson was not paying a number of its subcontractors, despite representing to the Federal Government they had been paid and billing the Federal Government for those payments. (SAC, ¶ 15).

Plaintiff further learned that Chris Dawson's personal accountant, Brian Hara (Chris Dawson is an owner of the Company and the person for which it is named), was withdrawing large sums of money and writing them off as personal loans to Mr. Dawson. This led Plaintiff to believe that this was the reason subcontractors were not being paid. (SAC, ¶ 16).

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

Plaintiff's role was Director of Strategy and Development; in that role he was responsible for recruiting subcontractors. As part of his investigation, Plaintiff also saw names of Dawson subcontractors that he did not recognize, two of which were JBW and ISB Consulting. Plaintiff believed that these were illegitimate (essentially, fake) subcontractors. JBW are the initials of the surnames of three of Dawson's senior managers: Wesley Lane, Billy Cress, and Jeff Bleke. Plaintiff learned that Dawson had billed the agencies of the United States Army, Navy, and Air Force for "management and consulting services" performed by JSB and ISB when Plaintiff knew, by reason of his position at Dawson, that no such "management and consulting services" had ever been performed. Based on this investigation, Plaintiff concluded Dawson was defrauding the Federal Government. (SAC, ¶ 17).

In addition, through his investigation, Plaintiff learned that Chris Dawson had caused Dawson to pay for his personal expenses. This increased Dawson's calculation of Dawson's General and Administrative ("G&A") expenses, a percentage of which were likewise billed to the Federal Government. Given that these G&A expenses were inflated, this likewise caused the invoices to be fraudulent. (SAC, ¶ 18).

On or about March 31, 2020, Plaintiff informed a co-worker, Juan Herrada, that he was going to speak with his direct superior, Dave Johnson, regarding the fraud he had discovered. Plaintiff further represented that he would be reporting the fraud to the United States Attorney. (SAC, ¶ 19).

Later that same day, Plaintiff received a phone call from Dave Johnson, in which Mr. Johnson stated that he had received a call from Juan Herrada, informing him that Plaintiff intended to report Dawson's unlawful activities to the United States Attorney. Plaintiff stated to Mr. Johnson that because he was a senior manager, he was obligated to come forward when there was evidence of fraud and wrongdoing, especially with respect to Dawson's federal contracts. Plaintiff

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

informed Mr. Johnson that Plaintiff needed to discuss the issue further with management. (SAC, ¶ 20).

Mr. Johnson became hostile, and Plaintiff asked Johnson whether his job was in jeopardy. Johnson responded that: "You are the one who told me, I should always keep my options open." Mr. Johnson told Plaintiff that they would have a follow up phone discussion the following morning. (SAC, ¶ 21).

The very next morning, on or around April 1, 2020, Plaintiff received a phone call from Mr. Johnson. During that phone call, Mr. Johnson informed Plaintiff that he was being terminated due to "restructuring" in the company. (SAC, ¶ 22).

There had been no discussion with Plaintiff of any restructuring of his position prior to the phone call on April 1, 2020. Plaintiff believes, and thereon alleges that a purported "restructuring" was merely pretext for his termination, and that the termination was being driven management's belief that Plaintiff intended to report his good-faith belief in the existence of fraudulent activities he had discovered and because of his desire to raise his concerns further with Defendant. (SAC, ¶ 23).

## III.   PROCEDURAL BACKGROUND

Plaintiff's initial complaint was removed from state court on June 14, 2021. [Dkt. 1]. On June 17, 2021, Defendant filed a Motion to Dismiss alleging that: [1] Plaintiff's complaint was time barred, and [2] Plaintiff failed to allege the actual state or federal statute that he believed may have been violated. [Dkt. 6]. Other than alleging that Plaintiff needed to identify the specific statutes, Defendant did not argue that Plaintiff needed to meet the heightened pleading standard for fraud. [Dkt. 6]. On February 1, 2022, this Court rejected Defendant's statute of limitations argument but held that Plaintiff did need to identify the specific statutes that he believed may have been violated and gave leave to file amended complaint. [Dkt. 21]. Plaintiff filed a First Amended Complaint ("FAC") on March 1, 2022. [Dkt. 23].

4

On April 15, 2022, after asking for an extension (to Answer), and without meeting and conferring, Defendant filed a Motion to Dismiss alleging that the FAC did not contain the specificity required by Rule 9(b). [Dkt. 27].

Rather than argue about the specificity, Plaintiff prepared a proposed Second Amended Complaint ("SAC") that addressed all of the issues set forth in Defendant's motion. [Dkt. 30]. Defendant refused to meet and confer, instead stating only generally that the SAC was insufficiently pled. [Dkt. 30]. As a result, Plaintiff filed an ex parte application for leave to file the SAC which Defendant also opposed. [Dkt. 30, 32]. The Court granted the ex parte application, and Plaintiff filed the SAC. [Dkt. 34, 37]. Again, without meeting and conferring, Defendant filed this motion to dismiss, contending that even more specificity is required. [Dkt. 36].

## IV.   DISCUSSION

### A.   Plaintiff's First Cause of Action for Violation of Labor Code Section 1102.5(b)

#### 1.   Legal Standard

##### a.   Overview of Labor Code Section 1102.5(b)

"California Labor Code § 1102.5(b) is a whistle-blower statute that protects employees from retaliation when they have 'reasonable cause to believe' that their employer is in 'violation of state or federal statute' or 'local, state, or federal rule or regulation.'" *Clevland v. Ludwig Institute for Cancer Research Ltd.*, 2022 WL 80265 at *4 (S.D. Cal. 2022) (quoting Lab. Code § 1102.5(b)).

Section 1102.5(b) states:

> (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, *or because the employer believes that the employee* disclosed or *may disclose information*, to a government or law enforcement agency, *to a person with authority over the employee* or another employee who has the authority to investigate, discover, or correct the violation or

5

> noncompliance, . . . if the *employee has reasonable cause to believe* that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation . . . .

Cal. Lab. Code § 1102.5(b) (emphasis added).

The crux of section 1102.5 is the employer's <u>retaliation</u> against the employee "because the employer believes that the employee disclosed or may disclose information . . . that the employee <u>has reasonable cause to believe</u> that the information discloses a violation of state or federal statute." Lab. Code § 1102.5(b) (emphasis added).

> **b.      The Employee Need Not Prove an Actual Violation of Any Underlying Statute—Only That the Employee "Reasonably Believed" That That There Was a Violation. In Fact, Under Labor Code Section 1102.5(b), The Employee Can Be Wrong—There May Not Have Been a Violation at All.**

Notably, <u>the employee does not need to prove that there was an actual "violation of [any] state or federal statute."</u> *Id.* To the contrary, as this Court previously noted (*see* Dkt No. 21 at 8:7-9), "[t]he employee must have an actual belief that the employer's actions were unlawful and the employee's belief, <u>*even if mistaken*</u>, must be reasonable." *Tam v. Qualcomm, Inc.*, 300 F. Supp. 3d 1130, 1148 (S.D. Cal. 2018) (emphasis added) (citing *Carter v. Escondido Union High Sch. Dist.,* 148 Cal. App. 4th 922, 933–34 (2007)). In that regard, there may not have even been an actual violation. That is because the Legislature sought to remedy retaliation against the employee even if the employee was wrong.

The Ninth Circuit, in *Lukov v. Schindler Elevator Corp.,* 594 Fed. Appx 357, 358 (9th Cir. 2015), explained:

> The district court also erred in granting summary judgment against Lukov on his claim under California Labor Code §

6

1

2

3

4

5

6

> 1102.5. Even assuming, for the sake of argument, that Lukov
> was mistaken about whether state regulations prohibited the
> specific location of the shunt trip at issue, Lukov came forward
> with evidence from which a trier of fact could find that he had
> "reasonable cause to believe" (which is all that the statute
> requires) that the shunt trip's placement violated safety
> regulations. <u>California Labor Code § 1102.5 protects whistle
> blowers if they act with reasonable cause to believe that a rule
> or regulation was violated, even if they turn out to be wrong.</u>

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* at 358; *see also Cleveland v. Ludwig Institute for Cancer Research Ltd.*, 2022 WL 80265 at \*4 (S.D. Cal. 2022) (emphasis added) ("Even assuming Kolodner was mistaken, Plaintiffs may still come forward with evidence from which a trier of fact could find Kolodner had "reasonable cause to believe" Defendant's actions violated California Labor Code § 204(a). This is all that California Labor Code § 1102.5 requires."); *Green v. Ralee Engineering Co.,* 19 Cal.4th 66, 87 (1998) ("<u>an employee need not prove an actual violation of law</u>; it suffices if the employer fired him for reporting his "reasonably based suspicions" of illegal activity. . . . [¶] [P]laintiff's suspicion that defendant's conduct may have violated the act and its regulations was certainly "'reasonably based.'") (emphasis added) (superseded by statute on other grounds); *Devlyn v. Lassen Mun. Utility Dist.*, 737 F.Supp.2d 1116, 1124 (2010) ("<u>Defendant's argument inappropriately alters the definition of "protected activity," implying that the person reporting the suspected violation must be correct in order to be protected</u>. That is not what the statute requires. "Reasonable cause" is the relevant standard, and here Defendant has alleged that he reasonably believed that a statute was being violated.") (emphasis added); *Nejadian v. County of Los Angeles*, 40 Cal.App.5th 703, 719 (2019) ("the employee must show *only* that he or she reasonably believed that there was a violation of a statute, rule, or regulation").

> **c.     Plaintiff Need Only Show "Some Legal Foundation"
> For His Suspicion of Illegal Activity; Plaintiff Need Not
> Plead an Actual Violation**

7

"To have a reasonably based suspicion of illegal activity, the employee must be able to point to *some* legal foundation for his suspicion—*some* statute, rule or regulation which *may* have been violated by the conduct he disclosed." *Turner v. City and County of San Francisco,* 892 F.Supp.2d 1188, 1199 (N.D. Cal. 2012) (emphasis added); *accord Jadwin v. County of Kern,* 610 F.Supp.2d 1129, 1153 (E.D. Cal. 2009).

Only in cases where the Plaintiff failed to identify <u>any</u> underlying violation, have the courts found the Plaintiff's pleading insufficient. *See Love v. Motion Indus., Inc.*, 309 F.Supp.2d 1128, 1135 (N.D.Cal.2004) ("Plaintiff does not cite <u>any</u> statute, rule, or regulation that may have been violated by the disclosed conduct. Rather, he argues simply that he reasonably believed that the activity violated some <u>unnamed</u> statute, rule, or regulation.") (emphasis added); *see also Clevland v. Ludwig Institute for Cancer Research Ltd*., 2022 WL 80265 at *4 (S.D. Cal. 2022) ("allegation that . . . Defendant violated <u>some</u> provision of 2 CFR Part 200 is insufficient . . . .) (emphasis added); *Fleeman v. County of Kern*, 2021 WL 1221469, at *5 (E.D. Cal. 2021) ("Plaintiff's complaint also fails to identify what statute, rule, or regulation that he believed the County violated"); *La v. San Mateo Cty. Transit Dist.*, 2014 WL 4632224, at *5 (N.D. Cal. 2014) ("La completely fails to connect the misconduct she allegedly disclosed to a specific rule, regulation or statute.").

Finally, "[w]hether [Plaintiff's] belief was, in fact, reasonable cannot be answered at the pleading stage.'" *Clevland v. Ludwig Institute for Cancer Research Ltd*., 2022 WL 80265 at *4 (S.D. Cal. 2022) (internal quotations omitted).

## 2. Plaintiff's SAC More Than Sufficiently Pleads a Cause of Action for Violation of Labor Code Section 1102.5(b)

The foregoing legal standard makes clear that Plaintiff's SAC more than sufficiently states a cause of action violation of Labor Code section 1102.5(b).

Plaintiff's SAC sets forth in detail the background facts that lead Plaintiff to learn that Dawson was billing the federal government for subcontractors that had not

8

been paid. (SAC, ¶¶ 12-16). DeSouza then conducted an investigation and discovered the following:

> Plaintiff's role was Director of Strategy and Development; in that role he was responsible for recruiting subcontractors. As part of his investigation, Plaintiff also saw names of Dawson subcontractors that he did not recognize, two of which were JBW and ISB Consulting. Plaintiff believed that these were illegitimate subcontractors. JBW are the initials of the surnames of three of Dawson's senior managers: Wesley Lane, Billy Cress, and Jeff Bleke. *Plaintiff learned that Dawson had billed the agencies of the United States Army, Navy, and Air Force for "management and consulting services" performed by JSB and ISB when Plaintiff knew, by reason of his position at Dawson, that no such "management and consulting services" had ever been performed. Based on this investigation, Plaintiff concluded Dawson was defrauding the Federal Government.*

(SAC, ¶ 17) (emphasis added).

> In addition, through his investigation, Plaintiff learned that Chris Dawson had caused Dawson to pay for his personal expenses. This increased Dawson's calculation of Dawson's General and Administrative ("G&A") expenses, a percentage of which are likewise billed to the Federal Government. Given that these G&A expenses were inflated, this likewise caused the invoices to be fraudulent.

(SAC, ¶ 18).

Plaintiff's SAC then proceeds to explain that in 2019 and 2020 Dawson's executives <u>Wesley Lane</u>, <u>Billy Cress</u>, and <u>Jeff Bleke</u> created entities "<u>JBW and ISB Consulting</u>," that "Dawson had billed the agencies of the United States Army, Navy, and Air Force for 'management and consulting services' performed by JSB and ISB," that "Plaintiff knew, by reason of his position at Dawson (Director of Strategy and Development in which he was responsible for recruiting subcontractors), that no such 'management and consulting services' had ever been performed." (SAC, ¶ 17; *see also* SAC at ¶¶ 29, 32, 35, 38, 41, 44, 50, 53, 56, 59, 62, and 65). The same was true of Chris Dawson's fraudulent billing of increased G&A expenses. Plaintiff's

9

SAC explains in detail that this conduct violates 13 state and federal statutes. (*See* SAC at ¶¶ 29, 32, 35, 38, 41, 44, 50, 53, 56, 59, 62, and 65).

For example, as to 18 U.S.C. § 287, Plaintiff's SAC states:

> 29. Here, Defendants, violated 18 USC § 287 by engaging in the following conduct: [1] knowingly presenting false invoices to the Army, Navy, and Air Force, from at least the calendar years 2019 and 2020 and likely earlier, [2] the invoices were based on services that had not been performed and for inflated G&A expenses, [3] Dawson executives Chris Dawson, Wesley Lane, Billy Cress and Jeff Bleke knew that the invoices were based on services that had not been performed, and [4] Chris Dawson Wesley Lane, Billy Cress and Jeff Bleke knew that the invoices were based on services that had not been performed.

(Dkt 37 at ¶ 29).

Defendant's Opposition does not address the legal standards cited above. Instead, Defendant contends "Plaintiff's generic allegations fail to provide any of the detail necessary to establish that any alleged fraud took place." (Motion at 12:12-13). But Plaintiff does not need to "establish that any alleged fraud took place." Plaintiff need only plead facts to allege that "he reasonably believed that a statute was being violated." *Devlyn v. Lassen Mun. Utility Dist.*, 737 F.Supp.2d 1116, 1124 (2010).

Citing paragraphs 12-13 of the SAC, Defendant then contends that "Plaintiff, however, completely fails to identify who made such representations on behalf of Defendant, when it was made, as to which contract such representations pertained." (Mot. at 12:12-23). Defendant continues to argue that "Plaintiff completely fails to provide 'the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" (Mot. at 5-7).

Defendant ignores that paragraphs 12-13 of the SAC merely provide the background that led to Plaintiff's investigation that discovered the actual fraud. (Mot. at 12:12-23). The SAC later sets forth that in 2019 and 2020 Dawson's

10

executives <u>Wesley Lane</u>, <u>Billy Cress</u>, and <u>Jeff Bleke</u> caused Defendant to fraudulently bill the federal government through their entities <u>JBW and ISB Consulting</u>." (SAC, ¶ 17; *see also* SAC at ¶¶ 29, 32, 35, 38, 41, 44, 50, 53, 56, 59, 62, and 65).

Defendant argues that "Plaintiff fails to even aver as to a reasonable belief that these companies were illegitimate or how the transactions alleged were illegal in any way." (Mot. at 13:16-22). But the SAC explains that Defendant's executives billed the federal government for services that were not performed and how Defendant's practice violated 13 state and federal statutes. (SAC, ¶¶ 27-65). This is more than sufficient to plead Plaintiff's "reasonable belief" that Defendant's conduct violated "*some* statute, rule or regulation which *may* have been violated by the conduct he disclosed." *Turner v. City and County of San Francisco*, 892 F.Supp.2d 1188, 1199 (N.D. Cal. 2012). Plaintiff's SAC bears no resemblance to the cases where 12(b)(6) motions have been granted because there the plaintiffs failed to identify "what statute, rule, or regulation that he believed [was] violated." *Fleeman v. County of Kern*, 2021 WL 1221469, at *5 (E.D. Cal. 2021).

Defendant also contends that Plaintiff "fails to allege . . . that these executives knew that the invoices were based on services that had not been performed and for inflated G&A expenses." (Mot. at 15:19-23). But the SAC specifically alleges that JBW and ISB Consulting were named after these individuals, that the companies did not perform the services reflected in the government invoices, and that "Dawson executives Chris Dawson, Wesley Lane, Billy Cress and Jeff Bleke knew that the invoices were based on services that had not been performed." (SAC, ¶¶ 17, 29). As a result, in addition to the fact that Plaintiff did plead Defendant's knowledge with specificity, this is not even required by Rule(b) which specifically allows that, "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." F.R.C.P. 9(b).

Defendant places great emphasis on *Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009). *Kearns* is not a Labor Code section 1102.5(b) case. Instead, *Kearns* was an unfair competition case, in which the plaintiff, Kearns, contended that he was defrauded by Ford to purchase a Certified Pre-Owned Vehicle ("CPO") based on a series of fraudulent television advertisements and sales material. *Id.* at 1126-1127. However, Kearns did not "specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material. Kearns also failed to specify which sales material he relied upon in making his decision to buy a CPO vehicle." *Id.* As set forth above, here, Plaintiff asserts a Labor Code section 1102.5(b) claim which does not require proof of the elements of fraud—only a reasonable suspicion that the violation of a statute occurred. Further, here, unlike *Kearns* where the Plaintiff failed to identify how he was deceived by any of the fraudulent material or what those advertisements stated, here, Plaintiff alleges specifically the "the who, what, when, where, and how' of the misconduct charged." *Id.* at 1124. Plaintiff's complaint is "specific enough to give defendants notice of the particular misconduct." *Id.*

Further, as Defendant recognizes, "the rule may be relaxed as to matters peculiarly within the opposing party's knowledge. . . . Such an exception exists where, as in cases of corporate fraud, the plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing." *Wool v. Tandem Computers,* 818 F.2d 1433, 1439 (9thCir. 1987). In *Wool,* a securities fraud case, the plaintiff pled fraud based on "information and belief" based on statements made in a SEC criminal complaint that had been filed against the defendant corporation. The plaintiff's allegations were borrowed entirely from what the SEC had alleged. The Ninth Circuit held that this was sufficient under the circumstances because the details of the fraud were in the defendant's knowledge. In addition, individual corporate defendants moved to dismiss, "for failing to attribute particular fraudulent

12

statements or acts to each individual defendant." *Id.* at 1440. The Ninth Circuit disagreed because "the individual defendants are a narrowly defined group of officers who had direct involvement not only in the day-to-day affairs of [the Defendant corporation], but also in [its] financial statements in particular." *Id.* at 1441.

Here, Plaintiff has sufficiently alleged Defendant's wrongdoing based on his own personal knowledge, unlike *Wool* which was pled on "information and belief" based on what had been previously pled in an SEC complaint. Plaintiff cannot be expected, and is not required to know, every detail regarding Defendant's fraudulent billing particularly where that information is within the knowledge of Defendant. Further, again, this is not a fraud case, but a retaliation case, and Plaintiff does not even need to prove the fraud actually occurred. Further, here, Plaintiff provided more detail regarding the identity of Defendant's officers than was provided in *Wool*. In *Wool,* plaintiff only identified the corporate actors by group and not by name as Plaintiff did here.

Finally, as the case law cited by Defendant provides, the level of specificity required at the pleading stage is only "specific enough to give defendants notice of the particular misconduct . . .so that they can defend against the charge and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Here, Plaintiff's SAC sets forth "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir. 2007) ("Rule 9(b) 'requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.'"); *Wool v. Tandem Computers,* 818 F.2d 1433, 1439 (9th Cir. 1987) ("pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. While mere conclusory allegations

of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent activities are sufficient.") (internal citations and quotations omitted).

### 3. Plaintiff Sufficiently Alleges That He Engaged in Protected Activity

Labor Code section 1102.5(b) not only protects against retaliation where an employee makes an actual report of unlawful activity but also where "the employer <u>believes</u> that the employee disclosed or <u>may</u> disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance. Labor Code § 1102.5(b) (emphasis added).

In the FAC, Plaintiff alleged that he told his supervisor, Dave Johnson, that "Plaintiff intended to file a complaint against Defendant." (Dkt. No. 23, ¶ 14 at 5:23). In the SAC, Plaintiff elaborated that he "intended report Dawson's unlawful activities to the United States Attorney." (SAC, ¶ 20). Both in the FAC and the SAC Plaintiff also alleged that he told Johnson that "Plaintiff needed to discuss the issue further with management."  (Dkt. No. 23, ¶ 14 at 5:28; SAC, ¶ 20). The SAC explains that Defendant then retaliated against Plaintiff by firing him. (SAC, ¶¶ 21-22). This is more than sufficient to state a claim under Labor Code section 1102.5(b) that Plaintiff was fired because his "employer believe[d] that the employee may disclose information . . . . to a government or law enforcement agency, [or] to a person with authority over the employee . . . ."  Labor Code § 1102.5(b).

Defendant argues that the Court should disregard the threatened report to the U.S. Attorney's Office because this level of detail should have been included in the FAC and that Plaintiff "only intended to report the alleged misconduct to his direct superior." (Motion at 16:7-9). This argument fails. First, even if the pleadings were inconsistent, which they are not, the Ninth Circuit has held that is not grounds to grant a 12(b)(6) motion:

14

> The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. Rather, the district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure. Though the Federal Circuit reached a contrary conclusion in *Bradley v. Chiron Corp.,* 136 F.3d 1317, 1326 (Fed.Cir.1998), no other court of appeals has followed that decision, and we decline to do so.

> The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading. The district court's order, which is based on the contrary conclusion, must be reversed.

*PAE Government Services, Inc. v. MPRI, Inc.,* 514 F.3d 856, 859-860 (2007).

Second, the allegations are not in any way inconsistent, and certainly not a "sham." Plaintiffs' FAC alleges that Plaintiff told his supervisor that "Plaintiff intended to file a complaint against Defendant." (Dkt. 23, ¶ 14 at 5:23). In the SAC, Plaintiff elaborated that the complaint he intended to file was a "report [of] Dawson's unlawful activities to the United States Attorney." (SAC, ¶ 20). This is simply additional detail and is in no way "inconsistent," and to hold otherwise would violate the rule that the complaint read "in the light most favorable to Plaintiff" and that allegations "are assumed to be true for purposes of the motion."[1] *Odom v. Microsoft Corp.,* 486 F.3d 541, 554 (9th Cir. 2007).

Third, Plaintiff alleged both in the FAC and the SAC that he told Johnson that he "needed to discuss the issue further with management" which independently

---

[1] The same is true of Plaintiff's having previously pled on information and belief. There is nothing inconsistent about having previously pled that Plaintiff "believed" something occurred and subsequently pleading that it did in fact occur. These allegations are entirely consistent.

15

satisfies Labor Code section 1102.5(b) because "management" constitutes "a person with authority over the employee . . . ."  Labor Code § 1102.5(b).

*Watson v. Old Dominion Freight Line, Inc*., 2020 WL 10357171 (C.D. Cal. 2020), cited by Defendant, is inapplicable. In *Watson,* the plaintiff attempted to bring a Labor Code section 1102.5(b) claim based on his supervisor's conduct where he only complained about the conduct to the supervisor himself and never threatened or suggested he was going to report the conduct to anyone else. For that reason, the district held the section 1102.5(b) was not sufficiently pled. *Id.* at *5 ("An employee's report to a supervisor about the supervisor's own wrongdoing does not establish a claim for retaliation under § 1102.5."). In contrast, here, Plaintiff told Johnson that he was going to report the conduct of Dawson, Lane, Cress, and Bleke to the U.S. Attorney's Office and to management.  That is, Plaintiff was not complaining about Johnson's conduct to Johnson as was the situation in *Watson.*

> **B.    Plaintiff's SAC Sufficiently States a Third Cause of Action for Wrongful Termination in Violation of Public Policy**

Defendant also moves to dismiss Defendant's Third Cause of Action for Wrongful Termination in Violation of Public Policy on the grounds that it fails to meet the specificity requirements of Rule 9(b). For the reasons set forth above, Defendant's arguments fail.

> **C.    If For Any Reason the Court Finds That More Specificity is Required, Leave to Amend Should be Granted**

If for any reason the Court finds more specificity is required, Plaintiff should be given leave to amend as there could be no finding that Plaintiff could not cure any alleged deficiency by amendment. *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc*., 806 F2d 1393, 1401 (9th Cir. 1986) ("Because the district court did not determine, nor can we conclude, that the allegation of other facts could not possibly cure the deficiencies in Schreiber's complaint, the district court abused its discretion in dismissing the RICO counts with prejudice.").

16

## V.      CONCLUSION

        For the foregoing reasons, Plaintiff respectfully requests that the motion be denied.

    DATED: September 8, 2022       THE KNEAFSEY FIRM, INC.


                                    By
                                       _____
                                         Sean M. Kneafsey
                                       Attorneys for Plaintiff
                                       LYAN FRANCIS DE SOUZA

OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT